## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

|  |  |
|---|---|
| MELISSA O'BRIEN and TREVINO SNOWDEN, ) ) ) ) | Civil Action File No.: |
| Plaintiffs, ) ) | **JURY TRIAL DEMANDED** |
| v. ) ) | |
| HIGHLAND RIVERS BEHAVIORAL HEALTH, and MELANIE DALLAS, individually and in her official capacity, ) ) ) ) ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### Introduction

1.      Plaintiffs Melissa O'Brien and Trevino Snowden are dedicated professionals who passionately supported the mission of their employer, Defendant Highland Rivers Behavioral Health ("HRBH"), to provide critical mental health services to the public. When they learned of serious mismanagement at HRBH, including the failure to meet standards at a residential addiction services facility, they brought the problems to the Chief Executive Officer, Defendant Melanie Dallas, but she did nothing. Then they asked for help from elected officials, one of whom contacted the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD") to investigate, but not before a woman died at the facility.

1

Even then, HRBH took no remedial action, and so Plaintiffs contacted the Atlanta Journal-Constitution newspaper to shine a spotlight on the threat to public health posed by HRBH's mismanagement. HRBH and Ms. Dallas responded by retaliating against Plaintiffs in violation of the First Amendment to the Constitution of the United States and the Georgia Whistleblower Act.

2.     Plaintiffs assert claims for First Amendment Retaliation in violation of the United States Constitution under 42 U.S.C. § 1983 and whistleblower retaliation in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"). They seek back pay and lost economic benefits of employment, compensatory damages for emotional pain and suffering, punitive damages against Defendant Dallas in her individual capacity, reinstatement or promotion as applicable, and reasonable attorney's fees and costs of litigation.

## Jurisdiction and Venue

3.     Plaintiffs' constitutional claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4.     The Court has supplemental jurisdiction over Plaintiffs' Georgia Whistleblower Act claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside and conduct business within this district and the alleged unlawful employment practices occurred here.

2

## Parties

6.     Plaintiff Melissa O'Brien is a citizen of the State of Georgia and subjects herself to the jurisdiction of this Court.

7.     Plaintiff Trevino Snowden is a citizen of the State of Georgia and subjects herself to the jurisdiction of this Court.

8.     Defendant Highland Rivers Behavioral Health ("HRBH") is a public corporation and governmental entity created to provide mental health, developmental disabilities, and addictive diseases services to children and adults. O.C.G.A. § 37-2-6(a).

9.     Defendant HRBH is a "person" within the meaning of 42 U.S.C. § 1983.

10.     HRBH is headquartered in Dalton, Georgia in Whitfield County.

11.     Defendant Melanie Dallas is the Chief Executive Officer of Defendant HRBH and is directly responsible for the day-to-day operations of HRBH, including hiring and firing of personnel employed by HRBH, which authority she enjoys by virtue of O.C.G.A. § 37-2-6.1(a)(1).

12.     Defendant Dallas possesses final policymaking authority for HRBH with respect to the decision to terminate HRBH employees—and exercised it with respect to Plaintiffs in this case, for purposes of HRBH's liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

3

13.    Ms. O'Brien was at all relevant times a "public employee" as that term is defined by the GWA, O.C.G.A. § 45-1-4(a)(3).

14.    Ms. Snowden was at all relevant times a "public employee" as that term is defined by the O.C.G.A. § 45-1-4(a)(3).

15.    Defendant HRBH was at all relevant times a "public employer" within the meaning of the GWA, O.C.G.A. § 45-1-4(a)(4).

## Facts

### HRBH and the Relevant Programs

16.    HRBH is a Community Service Board ("CSB"), one of 22 organized and existing under the laws of the State of Georgia to provide mental health, developmental disabilities, and addictive diseases services to children and adults. *See* O.C.G.A. § 37-2-6.

17.    HRBH serves Georgia residents in the counties of Whitfield, Murray, Fannin, Gordon, Gilmer, Floyd, Bartow, Pickens, Cherokee, Polk, Haralson, Paulding, and, as of a merger in 2022 with the entity formerly known as the Cobb County Community Services Board, Cobb County.

18.    HRBH is managed by a local Governing Board, whose members are appointed by authorities of the community which HRBH serves. *Id.* at § 37-2-6(b).

19.     The day-to-day operations of HRBH, including the hiring and firing of employees, are handled by the Chief Executive Officer, Defendant Melanie Dallas. *Id.* at § 37-2-6.1(a)(1).

20.     As a CSB, HRBH contracts with and receives public funding from various agencies of the State of Georgia and is subject to oversight by the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD").

21.     However, HRBH retains unfettered discretion to design its own funding mix and can and does rely on funds from private organizations as well as state and federal funds.

22.     One of the programs operated by the Cobb County CSB prior to its merger with the HRBH, and by the HRBH thereafter, is called the "Mothers Making a Change" program ("MMAC"), also known as the Women's Treatment Recovery Support ("WTRS") program.

23.     MMAC is an intensive residential addiction services treatment program provided specifically to mothers who have young children and who suffer from drug and alcohol addiction.

24.     Another program operated by HRBH is the residential substance use disorder treatment services provided to young people at the George W. Hartmann Youth Center.

25.     HRBH also provides services to individuals who have intellectual and developmental disabilities throughout the service area.

### Ms. O'Brien and Ms. Snowden

26.     Plaintiff O'Brien is an experienced public relations and marketing professional with more than 25 years of experience in public relations and journalism.

27.     Plaintiff O'Brien was first hired as a Communications and Public Relations Specialist for the Cobb County CSB in February 2019, retained by HRBH after the merger with the Cobb County CSB, and then promoted to Director of Marketing in February 2022 and added as a member of the Executive Leadership Team of HRBH, which included Ms. Dallas.

28.     Ms. O'Brien's job duties consisted of taking primary responsibility over the development and execution of HRBH's public relations and marketing strategy to properly manage relationships with public and private stakeholders, effectively educate the public concerning available services and programs, and reach affected populations who could benefit from the services and programs which HRBH provides, as well as serve as a representative and liaison between HRBH and community partners, elected officials, and the media.

29.     Plaintiff Snowden is an experienced human resources professional who holds a master's degree in public administration and was hired by the Cobb County

CSB as a Human Resources Training Coordinator in January 2020 and retained after HRBH's merger with the Cobb County CSB.

30.     Ms. Snowden's job duties consist of ensuring that HRBH employees receive training mandated by the State of Georgia and comply with other qualifications requirements, and monitoring and maintaining records necessary for HRBH and its employees to comply with standards set forth by DBHDD and the Georgia Rules and Regulations.

31.     Over the course of her employment with HRBH, including on July 12, 2022, November 9, 2022, and November 30, 2022, Ms. Snowden routinely informed Ms. Erica Collins, Vice President of Human Resources for HRBH, of her desire to take advantage of any promotion opportunities and be promoted.

32.     On November 11, 2022, Ms. Snowden specifically told Ms. Collins that she would be sitting for the Professional in Human Resources certification examination in April 2023 and was still interested in any promotion.

33.     Ms. Collins told Ms. Snowden that she had positions to fill and would keep her in mind for promotion.

### The Negligence and Malfeasance of Melanie Dallas

34.     Defendant Dallas has consistently mismanaged HRBH—and the former Cobb County CSB when she was the Interim Chief Executive Officer of that

organization from July 2020 through June 2022—to the detriment of the citizens of Cobb County.

35.     For example, the number of people served in Cobb County facilities has been reduced to almost half the number from before the consolidation.

36.     Additionally, the Asset Transfer Agreement between the Cobb County CSB and HRBH resulted in the transfer of properties from Cobb County CSB to HRBH, which were subsequently transferred to the Highland Rivers Foundation, Inc. a 509(a)(c), without appropriate reconciliation.

37.     Additionally, Defendant Dallas is the Chief Executive Officer of the Highland Rivers Foundation, Inc., an organization meant to provide funding for HRBH, but the Foundation has operated at a consistent loss for at least three years prior to the consolidation of the Cobb County CSB with HRBH, with 90% of its expenses consisting of personnel salaries.

38.     HRBH also contracted with a start-up company called Ascend Community Staffing Partners to be the exclusive provider of employees for the programs operated by HRBH but Ascend did not have any other customers aside from HRBH, did not provide various reports and other deliverables to HRBH as required by the contract over a period of years, and left open hundreds of positions HRBH had contracted with it to staff.

39.     The contract with Ascend was also not sourced through the proper channels in compliance with the policies of HRBH or DBHDD.

40.     Yet, HRBH paid Ascend over $250,000 between October 2022 and January 2023.

41.     And HRBH also submitted inaccurate billing to DBHDD for reimbursement of expenses purportedly undertaken in connection with WTRS and MMAC and the Woman's Outreach Program in Floyd County.

42.     The above-pled and other fiscal and operational mismanagement resulted in, among other things, HRBH's failure to retain qualified personnel, causing the closure of several programs in Cobb County and a lack of therapists and nurses on-site at those residential homes which remained opened; a lack of qualified substance abuse therapists and clinicians available at the George W. Hartmann Center; and major problems with the MMAC program.

43.     With respect to MMAC, the program was unsuitable and unsafe for the participants because of extensive visible mold in apartment units, rodents, bee and roach infestations, and ceilings caving in.

44.     Indeed, on a site visit to the MMAC facility, Ms. O'Brien observed and smelled mold on walls, sunken ceilings, structurally unsound porches, and more than one staff member indicated that a cockroach had skittered across the face of the baby of one of the women in the program.

45.   These problems rendered the MMAC facility in non-compliance with the requirements for such programs, in violation of Ga. R. & Regs. 111-8-19-.11,

46.   Additionally, and critically, MMAC did not have appropriate 24-hour staff coverage necessary to provide safe supervision of clients, in violation of Ga. R. & Regs. 111-8-19-.20-.21.

***Ms. O'Brien and Ms. Snowden Attempt to Help HRBH Address the Problems***

47.   Ms. O'Brien and Ms. Snowden, among others, were deeply concerned about the failures of HRBH and the risks posed to members of the public who utilized its services.

48.   As a result, Ms. O'Brien raised the issue of inadequate staffing and unsafe conditions in the MMAC program with Defendant Dallas, including by urging Ms. Dallas and other management to take necessary action to convert a property already owned by Cobb County and used by HRBH into a residential facility that could provide safe and sanitary housing for MMAC participants in compliance with state regulations.

49.   Defendant Dallas ignored Ms. O'Brien's attempts to provide more funding and support to the MMAC program to bring it into compliance, or otherwise to ensure it was adequately staffed and safe and habitable for participants.

50.   Because Defendant Dallas ignored Ms. O'Brien's requests for remedial action related to the MMAC program, Ms. O'Brien told Georgia State

Representative Mary Frances Williams about non-compliance in the MMAC program when asked about concerns with HRBH at a Cobb County Legislative Delegation breakfast in November of 2022.

51.     The next month, on December 10, 2022, a woman who was participating in the MMAC program was found dead of a drug overdose in her room at the HRBH facility during the evening shift.

52.     MMAC staff had not been trained properly, did not fully search the woman or conduct a drug test upon her return to the facility, and the facility was not adequately staffed from 3:00 p.m. to 11:30 p.m. that night.

53.     Around the time of the death of the MMAC participant, Representative Williams made contact with DBHDD and an investigation began.

54.     DBHDD Assistant Commissioner Ashley Fielding and another DBHDD employee interviewed Ms. O'Brien, Ms. Snowden, and Representative Williams in connection with the non-compliance at HRBH.

55.     As a result of the interview, DBHDD opened an audit of HRBH.

56.     In January of 2023, Ms. O'Brien provided information to DBHDD Investigator Kenneth Ward concerning the lack of safety and sanitation at the MMAC facility, as well as the inadequate staffing at that program and other programs operated by HRBH, and other information about the mismanagement.

57.     Ms. Snowden provided information to Investigator Ward that she had reported to former Human Resource Director for Cobb County CSB Danna Nordin and Chief Clinical Operations Officer Cheryl Lewis that Human Resources Director Erica Collins asked Ms. Snowden to certify as complete the training records for healthcare providers when they were not complete.

58.     Specifically, Ms. Collins told Ms. Snowden to mark certain trainings as complete in compliance with State requirements, but Ms. Snowden knew the trainings provided only lasted for four hours while the State required 16 hours of training for these subjects.

59.     Ms. Collins told Ms. Snowden to mark the trainings as complete, but Ms. Snowden refused to do so because DBHDD policy prohibited failing to manually update trainings records to be correct as to training received.

60.     Investigator Ward also spoke with Defendant Dallas, who concluded that she believed there had been a complaint of non-compliance.

61.     Investigator Ward continued to speak with Ms. O'Brien, Ms. Snowden, and others over a five-month time period.

62.     Based on his investigation, Investigator Ward produced an audit, a draft of which was presented to Ms. Dallas in May 2023.

63.     Ms. Dallas learned from information contained in the draft audit that Ms. O'Brien provided information to DBHDD about HRBH and the alleged non-compliance.

64.     Ms. Dallas also learned from the audit that Ms. Snowden provided information to DBHDD, including information about being asked to falsify training records by documenting them as sufficient to satisfy a 16-hour training requirement for CSB employees when Ms. Snowden knew the trainings only lasted four hours.

65.     It would have been a violation of Part II, Section II, Subsection 2.F of DBHDD Policy 01-112, the DBHDD Provider Manual for Community Behavioral Health Providers, to manually update the training records in this way.

66.     DBHDD Policy 01-112 is a rule or regulation adopted and promulgated by DBHDD as directed by O.C.G.A. §§ 37-1-20 and 37-1-23.

67.     In early June 2023, Ms. Dallas held a meeting with members of the HRBH executive team and explained that, in response to the audit, she suggested to DBHDD that it would not be helpful for the results of the audit to be made public because the issues happened "on the Governor's watch."

68.     Ms. Dallas also confidently predicted to members of the HRBH executive team that DBHDD would "try to put this thing to bed" and revise the audit so that it would contain only a minimal subset of the allegations against HRBH.

69.    On June 20, 2023, DBHDD leadership arranged a meeting to address the audit of HRBH, which included state legislators with responsibility for oversight of public health, including State Representatives Sharon Cooper, Devan Seabaugh, Teri Anulewicz, and Mary Frances Williams and State Senator Kay Kirkpatrick.

70.    Defendant Dallas wrote a letter to DBHDD Commissioner Tanner prior to this meeting with information designed to minimize and sidestep the non-compliance at HRBH that was revealed in the audit.

71.    Defendant Dallas continued to take no action to remedy the problems with MMAC or other programs operated by HRBH.

72.    As a result, Ms. O'Brien and Ms. Snowden went to Cobb County District Attorney Flynn Broady to ask him for help to stop the mismanagement at the HRBH.

73.    District Attorney Broady could not help because the matters being investigated were within the jurisdiction of DBHDD.

74.    As a result, Ms. O'Brien and Ms. Snowden contacted the Atlanta Journal-Constitution ("AJC") and provided information about the continuing mismanagement of the HRBH.

75.    In November 2023, the AJC interviewed Defendant Dallas about the problems with MMAC.

76.     Ms. Dallas knew that Ms. O'Brien had previously submitted press releases for HRBH to the AJC and advocated in the Summer of 2023 for media to attend the MMAC program graduation ceremony, which Ms. Dallas rejected.

77.     On November 6, 2023, Ms. Dallas held a mandatory meeting with several HRBH staff members, ostensibly to talk about the consolidation of the Cobb County CSB with HRBH, but including various employees who did not have any involvement with the consolidation.

78.     In the meeting, Ms. Dallas talked about the AJC's involvement and said that "some people think they're protected whistleblowers, but they're not."

79.     Ms. Dallas also said in this meeting that, "a group of disgruntled employees went to DBHDD and didn't get what they wanted, so they went to Flynn Broady, and when they didn't get what they wanted from him, they went to the AJC."

80.     On December 18, 2023, the Atlanta-Journal Constitution published a story about HRBH, the audit by DBHDD, and the death of the woman who was a participant in the MMAC program.

### *Retaliation Against Ms. O'Brien and Ms. Snowden*

81.     Shortly after the investigation by Kenneth Ward began, Ms. Snowden lost her access to the Kronos timekeeping software used by HRBH and by Ms. Snowden to do her job, and she was denied access to other systems.

82.     This loss of access limited Ms. Snowden's ability to run accurate reports and access other personnel data necessary for her job duties.

83.     Ms. Snowden was also denied a $2,000 increase in her pay that HRBH policy required her to receive when she passed the PHR exam in April 2023.

84.     Also in 2023, Ms. Snowden was told she could no longer provide new hire orientation training to other employees from Cobb County, but only in person in Bartow County, which was 45 minutes further away from her home.

85.     After Ms. Snowden told Erica Collins that no one from Cobb County would come to the training in Bartow County, Erica Collins relented and allowed Ms. Snowden to continue the new hire orientation training from Cobb beginning with March 13, 2023.

86.     And on May 12, 2023, Ms. Snowden was also denied personal leave that was previously approved for her to take in connection with a disability under the Americans with Disabilities Act ("ADA") when Erica Collins called her and said, "I didn't give you permission to leave, you need to get back to work."

87.     On July 10, 2023, Ms. Collins promoted Suzanne Gazaway to the position of Director of Human Resources—Ms. Snowden's supervisor—instead of Ms. Snowden.

88.    Ms. Gazaway was significantly less qualified than Ms. Snowden for the position and did not have a master's degree or the human resources certification Ms. Snowden possessed.

89.    The difference in pay between Ms. Snowden's current job and the Director position is approximately $25,000 per year.

90.    When Ms. Snowden went out on leave under the Family and Medical Leave Act ("FMLA") on December 5, 2023, she was initially denied the annual bonus that everyone else received in January 2024.

91.    When Ms. Snowden returned, Ms. Gazaway and Ms. Collins told her that various changes to policies and procedures were undertaken when she was out, to the effect that she would have different duties and responsibilities, and they gave no explanation for this.

92.    Shortly after the Atlanta Journal-Constitution published the story about HRBH on December 18, 2023, Chairman of the HRBH Governing Board Pete Quinones said he advised not to fire Ms. O'Brien because she was a whistleblower.

93.    Within weeks thereafter, HRBH directed Ms. O'Brien to appear in person and surrender her computer, ostensibly to receive a newer computer, but Ms. O'Brien's computer was only about a year old, and no other employees had their computers replaced at that time.

94.     Ms. O'Brien's job duties were also taken away, and she was told not to access certain information or produce the same work she had previously produced for HRBH, leaving her with very little to do.

95.     On January 15, 2024, Ms. O'Brien wrote an email to Melanie Dallas, Rodney Moore, Erica Collins, Dena Payne, and Stephanie Bishop, stating that she understood Ms. Dallas to have rejected the findings of the DBHDD audit, and that she was gravely concerned about the continuing safety, sanitation, and inadequate staffing at MMAC and desired it to be remedied.

96.     Ms. O'Brien also wrote that she concerned about overbilling of DBHDD by HRBH and waste and mismanagement in HRBH's payments to Ascend and a company called Eponaquest, with whom Defendant Dallas is an "Advanced Approved Instructor" and which provided "experiential learning" programs using horses, which HRBH staff were required to attend.

97.     Ms. O'Brien also complained in this email that she had been retaliated against by having work taken away from her after providing information to DBHDD for the investigation.

98.     On March 14, 2024, Ms. O'Brien's employment was terminated, and the reason HRBH gave her was that it was "going in a different direction."

## COUNT I

### FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983
### *Against Defendants HRBH and Melanie Dallas*

99.   Plaintiffs hereby incorporates all preceding paragraphs set forth above as if set forth here in their entirety.

100.   The First Amendment to the United States Constitution guarantees that the government "shall make no law … abridging the freedom of speech, or of the press," and the same were made applicable to the States through the Fourteenth Amendment to the Constitution.

101.   42 U.S.C. § 1983 provides a cause of action for damages against any person who, under color of law, deprives a person of "rights, privileges, or immunities secured by the Constitution and laws."

102.   Defendant HRBH is a "person" within the meaning of § 1983.

103.   Defendant Dallas possesses final policymaking authority for HRBH with respect to the decision to terminate HRBH employees—and exercised it with respect to Plaintiffs in this case, for purposes of HRBH's liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

104.   Plaintiffs engaged in speech or activity protected by the First Amendment, and Defendant Dallas believed that they did, when they spoke to and provided information to the Atlanta Journal-Constitution about Defendant Dallas's

mismanagement of HRBH which led to the death of a woman and other mismanagement of HRBH.

105.   HRBH and Defendant Dallas, acting as the individual with final policymaking authority for HRBH with respect to the decision to terminate Plaintiffs, did punish and retaliate against Plaintiffs for their exercise of protected rights to speak as citizens on matters of public importance when she subjected them to numerous adverse employment actions including denial of promotion, denial of necessary computer system access, denial of leave, unwarranted scrutiny and sham investigation, denial of bonuses and compensation, and termination of employment.

106.   Remarks by Defendant Dallas and others, the timing of events, the pretextual nature of explanations given by Defendant Dallas for various actions, and other circumstantial evidence establishes that there is a causal connection between Plaintiffs' protected activity and the adverse employment actions about which they complain.

107.   Plaintiffs' protected activity was a motivating factor in Defendants' decisions to take the adverse employment actions complained above against Plaintiffs.

108.   As direct and proximate results of the actions of Defendants HRBH and Dallas, Plaintiffs have been damaged and are entitled to economic and non-economic

compensatory damages, including damages for lost wages and economic benefits of her employment, and damages for pain and suffering and emotional distress.

109.   Defendant Melanie Dallas's actions were undertaken intentionally, with malice, and/or with reckless disregard for the federally protected rights of Plaintiffs, entitling them to an award of punitive damages against her individually.

110.   Plaintiffs are also entitled to recover their reasonable attorney's fees and costs of this litigation under 42 U.S.C. § 1988.

## COUNT II

**WHISTLEBLOWER RETALIATION**
**GEORGIA WHISTLEBLOWER ACT**
*Against Defendant HRBH*

111.   Plaintiffs hereby incorporates all preceding paragraphs set forth above as if set forth here in their entirety.

112.   Ms. O'Brien was, at all relevant times, an "employee" as that term is defined by O.C.G.A. § 45-1-4(a)(3).

113.   Ms. Snowden was, at all relevant times, an "employee" as that term is defined by O.C.G.A. § 45-1-4(a)(3).

114.   HRBH is a "public employer" within the meaning of O.C.G.A. § 45-1-4(a)(4).

115.   During their employment, Plaintiffs O'Brien and Snowden engaged in statutorily protected activity within the meaning of O.C.G.A. § 45-1-4(d)(2) by

disclosing misconduct amounting to fraud, waste, or abuse and violations of "laws, rules, or regulations" to supervisors and to a government agency.

116.   Plaintiffs also objected to the activities, policies, and/or practices of a public employer as pled above, and had reasonable cause to believe that such activities, policies, and/or practices were in violation of or noncompliance with a law, rule, or regulation, within the meaning of O.C.G.A. § 45-1-4(d)(3).

117.   The fraud, waste, or abuse, and violations of "laws, rules, or regulations" which Plaintiffs disclosed, and/or the activities, policies, practices, or conduct which Plaintiff reasonably believed were violations of "laws, rules, or regulations," included, but were not limited to, violations of:

    a.    Ga Comp. R. & Regs. § 111-8-19-.11;

    b.    Ga Comp. R. & Regs. § 111-8-19-.20;

    c.    Ga Comp. R. & Regs. § 111-8-19-.21;

    d.    Rules of the Georgia Department of Behavioral Health and Developmental Disabilities adopted according to state law;

    e.    O.C.G.A. § 37-2-6.1(a)(2).

118.   The disclosures and objections by Plaintiffs were made to a "supervisor" as that term is defined by O.C.G.A. § 45-1-4(a)(6), and/or a "government agency" as that term is defined by O.C.G.A. § 45-1-4(a)(1).

119.   As a result of Plaintiffs' disclosures and objections, HRBH retaliated against them within the meaning of O.C.G.A. § 45-1-4(a)(5) by subjecting them to numerous adverse employment actions including denial of promotion, denial of necessary computer system access, denial of leave, unwarranted scrutiny and sham investigation, denial of bonuses and compensation, and termination.

120.   By subjecting Plaintiffs to the adverse actions pled above for disclosing misconduct amounting to fraud, waste, or abuse and violations of "laws, rules, or regulations," and/or for objecting to activities or practices they reasonably believed to be violations of or non-compliance with laws, rules, or regulations, HRBH violated the Georgia Whistleblower Act.

121.   Ms. O'Brien is entitled to reinstatement to her position as the Director of Marketing or an equivalent position with HRBH.

122.   Ms. Snowden is entitled to promotion to the position of Director of Human Resources or an equivalent position with HRBH.

123.   Plaintiffs are also entitled to reinstatement or instatement of all fringe benefits, economic benefits of employment, and/or seniority rights they would have had and enjoyed in the absence of the retaliation they suffered.

124.   Plaintiffs are also entitled to compensatory damages for emotional pain and suffering caused by HRBH's retaliation.

125.    Plaintiffs are also entitled to reasonable attorney's fees, court costs, and expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff pray that this Court take jurisdiction of this matter, honor her demand for a jury trial, and grant the following relief against Defendants:

A.    A declaration that HRBH and Defendant Melanie Dallas violated Plaintiffs' rights to be free from First Amendment Retaliation under 42 U.S.C. § 1983;

B.    A declaration that HRBH violated the GWA with respect to Plaintiffs;

C.    An award of economic damages, including lost wages and benefits, for Defendants' violations of 42 U.S.C. § 1983 and the GWA;

D.    An award of non-economic damages for pain and suffering, including emotional distress, for Defendants' violations of 42 U.S.C. § 1983 and the GWA;

E.    An award of punitive damages against Defendant Dallas for her violation of 42 U.S.C. § 1983;

F.    Equitable relief in the form of reinstatement or front pay in lieu of reinstatement for Plaintiff Melissa O'Brien and instatement or promotion or front pay in lieu thereof for Plaintiff Trevino Snowden;

G.    An award of pre-judgment and post-judgment interest to Plaintiffs;

H.    An award of attorney's fees and costs to Plaintiffs; and

I.      Such other and further relief as this Court deems just and proper.

Respectfully submitted this 5th day of July, 2024.

**BEAL, SUTHERLAND,**
**BERLIN & BROWN, LLC**

By:     */s/ Brian J. Sutherland*
        Georgia Bar No. 105408
        brian@beal.law

2200 Century Parkway NE
Suite 100
Atlanta, GA 30345
Telephone: (678) 439-0330

*Counsel for Plaintiffs*